IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| CAPITOL SPECIALTY INSURANCE CORPORATION, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. 09-cv-92-JPG |
| CHARLES WHITAKER, RODNEY MOORE, and MICHAEL TAYLOR, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by plaintiff Capitol Specialty Insurance Corporation ("Capitol") (Doc. 30). Capitol argues it owes no duty to defend or indemnity defendants Charles Whitaker and Rodney Moore in an underlying tort suit because the liquor liability insurance policy it issued to Whitaker and Moore does not cover the wrongful action alleged in that suit. Whitaker and Moore have responded to the motion (Doc. 35), and Capitol has replied to that response (Doc. 37).

**I.    Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court

cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).

## II. Facts and Procedural History

The essential facts in this case are not in dispute. This matter arose after defendant Michael Taylor and his son were assaulted by two assailants in a proverbial "bar fight" on November 12, 2006, in Club Elite, a tavern in Cairo, Illinois. The fight began when Taylor, who was drinking alcohol served by Club Elite, threw the bottle of alcohol from which he was drinking at another patron, who then punched him in the jaw. Taylor was seriously injured in the assault, lost wages as a result of his injuries and incurred over $45,000 in medical bills treating those injuries.

On September 25, 2008, Taylor sued defendants Whitaker and Moore, the owners of Club Elite, in state court. *See Taylor v. Whitaker*, No. 2008 L 9 (Ill. Cir. Ct. Alexander Co.). The state law suit advanced a premises liability negligence theory, that is, it charged that the defendants were negligent in their affirmative duty as business-owners inviting people onto the business's premises for business purposes to aid or protect their patrons against unreasonable risk of physical harm. *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1058 (Ill. 2006); *see* Restatement (Second) of Torts § 344 (1965). Specifically, the complaint in the underlying action alleges Whitaker and Moore were negligent in:

a. Failing to provide adequate security;

2

  b.  By Failing to act and/or failing to act appropriately once the two individuals, Brandon Childs and Jason Cross, began to assault the Plaintiff and his son; and

  c.  By failing to warn of the existence of the danger posed by Brandon Childs and Jason Cross, two individuals generally known for violence.

(Petition ¶ 6; Doc. 2-3). The underlying complaint did not mention whether any of the parties had consumed alcohol sold, served or furnished by Club Elite. Capitol retained counsel to defend Whitaker and Moore, but now seeks a determination from the Court whether the representation is required.[1]

  Capitol brought this case under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that a liability insurance policy covering Whitaker and Moore (No. CS00322809) ("Policy") does not cover liability from the November 12, 2006, assault and that, as a consequence, it is not obligated to defend or indemnify Whitaker or Moore. The Policy contains two parts: a commercial general liability insurance ("CGL") part and a commercial liquor liability ("CLL") part. The parties agree that the CGL part of the Policy does not require Capitol to defend or indemnify Whitaker and Moore because of an exclusion for injuries arising from assault or battery. They disagree, however, whether the CLL part of the Policy provides coverage. The CLL part provides insurance coverage where liability "is imposed on the insured by reason of the selling, serving or

---

[1] Moore states in his affidavit that the lawyer retained to represent him told him that Taylor intended to amend his complaint to add a cause of action under the Dram Shop Act, 235 ILCS 5/6-21(a). The defendants further state that "it is pretty clear that Mr. Taylor really intends to argue Dram Shop liability once he gets his case to Court." ( Defs,' Resp. to Mot. Summ. J. 4.) The alleged statement from the lawyer is hearsay; the defendants' belief is unfounded speculation. Thus, the Court will not consider them in ruling on the pending summary judgment motion. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (stating Court considers only evidence admissible or usable at trial).

3

furnishing of any alcoholic beverage." Policy, § I, ¶1.a, CG 00 33 12 04 (Doc. 2-4 at 62). Capitol has filed this declaratory judgment action seeking a declaration that it, along with the rest of the policy, does not.

**III.    Analysis**

Under Illinois law, which all parties agree applies to this action, an insurer can owe two distinct duties to an insured: "(1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of a covered risk." *Chandler v. Doherty*, 702 N.E.2d 634, 637 (Ill. App. Ct. 1998). The duty to defend is broader than the duty to indemnity; if an insured owes no duty to defend, it cannot have a duty to indemnity. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993) ("Clearly, where there is no duty to defend, there will be no duty to indemnify. . . ."). The Court begins its examination with the broader duty.

A.    <u>Duty to Defend</u>

Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations end up being groundless, false or fraudulent. *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the bare allegations of the complaint to the relevant provisions of the insurance policy. *Id.*; *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993); *Chandler v. Doherty*, 702 N.E.2d 634, 638 (Ill. App. Ct. 1998). The Court is not limited to the *legal labels* in the underlying complaint but must determine whether the *conduct alleged* is

4

arguably covered by the policy. *Lexmark Int'l, Inc. v. Transportation Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001). If any theory of recovery in the underlying complaint falls within the insurance coverage, the insurer will have a duty to defend. *General Agents*, 828 N.E.2d at 1098. The threshold showing to trigger the duty to defend is minimal, and doubts about coverage must be resolved in favor of the insured. *Chandler*, 702 N.E.2d at 638. The insurer's knowledge that extrinsic facts not pled in the complaint will ultimately exclude coverage does not negate its duty to defend if the complaint, on its face, presents a claim potentially within the insurance policy's coverage. *Id.*

The interpretation of an insurance policy, even an ambiguous policy, is a question of law, and questions of coverage are therefore appropriate for summary judgment. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998); *Crum & Forster*, 620 N.E.2d at 1077. In interpreting a policy, the Court must attempt to effectuate the parties' intention as expressed by the policy, giving "due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *River*, 160 F.3d at 1169 (quotations omitted); *accord Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997); *Crum & Forster*, 620 N.E.2d at 1078. If the policy is unambiguous, the Court must construe it according to the plain and ordinary meaning of its terms. *River*, 160 F.3d at 1169; *Allen*, 128 F.3d at 466; *Crum & Forster*, 620 N.E.2d at 1078. On the other hand, if the policy is ambiguous, the Court must construe all ambiguities in favor of the insured and against the insurer, who drafted the policy. *River*, 160 F.3d at 1169; *Allen*, 128 F.3d at 466; *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992). To determine if an ambiguity exists, the Court must ask whether the policy, taken as a whole and reading all parts in light of the other parts, is susceptible to more than one reasonable interpretation. *River*, 160 F.3d

5

at 1169; *Allen*, 128 F.3d at 466; *Outboard Marine*, 607 N.E.2d at 1212. The parties' mere disagreement about the interpretation of a policy does not render it ambiguous. *River*, 160 F.3d at 1169.

    1.    <u>The Parties' Positions</u>

Capitol argues that the liability pled by Taylor in his underlying suit, as determined by the bare allegations of his complaint, is not "by reason of the selling, serving or furnishing of any alcoholic beverage" and thus is not covered by the CLL part of the Policy. It notes that although the consumption of alcoholic beverages may actually have played a role in the bar fight at Club Elite, no facts suggesting Whitaker and Moore served Taylor's assailants alcohol are pled in the underlying complaint, so the Court cannot consider them in determining whether the Policy covers liability from Taylor's lawsuit. Capitol further argues that the only way Taylor could hold Whitaker and Moore liable for serving alcohol is through the Illinois Dram Shop Act, 235 ILCS 5/6-21(a), but Taylor did not sufficiently plead such a claim in the underlying lawsuit because he did not mention alcohol and did not plead his injury occurred within the year before the lawsuit.

Whitaker and Moore contend the CLL part of the Policy covers damages from fights between bar patrons and the fact that Taylor was actually drinking alcohol served by Club Elite when the fight began is sufficient to bring it within the CLL part of the Policy. They believe that although Taylor does not mention the Dram Shop Act in his complaint in the underlying lawsuit, he intends to argue at trial, and perhaps to amend his complaint to assert, liability under that act, i.e., that Club Elite's serving him alcohol caused him to start the bar fight in which he was injured. They also argue Capitol's motion is premature because there has not been sufficient discovery to rule out Dram Shop Act liability, because Whitaker and Moore have not reviewed Taylor's deposition in the

6

underlying case and because the state court has not yet ruled whether Dram Shop Act liability has been pled. They also argue that the one-year statute of limitations is an affirmative defense that Taylor need not plead around in the underlying action. They further argue that the duties Taylor claims Whitaker and Moore breached only arose because they served alcohol and were therefore "by reason of the selling, serving or furnishing of any alcoholic beverage."

In reply, Capitol adds that Taylor's reliance upon his own drunkenness to establish a Dram Shop Act cause of action shows that such a claim could not be stated; the Dram Shop Act does not create a cause of action for the intoxicated person. Capitol reiterates that it is the actual complaint, not some hypothetical amended complaint, that the Court must examine in this case.

### 2. Application to this Case

The Court begins its analysis by examining "the risk undertaken, the subject matter that is insured, and the purposes of the entire contract." *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998). The Court notes that generally the purpose of liquor liability policies is to protect tavern owners against liability from injuries to third parties caused by those to whom they have served alcohol:

> [M]any jurisdictions impose liability on sellers or distributors of alcoholic beverages when a consumer of such beverages becomes intoxicated and injures a third party. Such laws are commonly known as dram shop acts. Consequently, those engaged in the sale and distribution of alcoholic beverages, such as liquor stores, taverns and nightclubs, purchase additional insurance to cover their liability.

9 Couch on Insurance § 132:56 (3d ed. 1997). The Illinois Dram Shop Act, 235 ILCS 5/6-21(a), imposes just such liability on sellers of alcoholic beverages where their customers become intoxicated and injure third parties. This is the type of liability against which insurance policies like the CLL part of the Policy are designed to protect. The Court keeps this purpose in mind when

7

examining the specific language of the Policy as compared to the allegations of the underlying complaint.

When comparing the Policy to the underlying complaint, the Court will not consider extrinsic evidence regarding the events. As noted above, the Court is generally limited to comparing the bare allegations of the complaint with the relevant provisions of the insurance policy. *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1079 (Ill. 1993). Additional discovery, as sought by the defendants, is irrelevant at this stage. While there is an exception to the general rule where the extrinsic facts "do not impact upon the underlying plaintiff's ability to pursue a theory of liability or resolve any issue critical to the insured's liability in the underlying litigation," *Fremont Compensation Ins. Co. v. Ace-Chicago Great Dane Corp.*, 710 N.E.2d 132, 139 (Ill. App. Ct. 1999), that exception does not apply in this case because the events that caused Taylor's injuries are central to the claims in the underlying action.

Taylor's underlying complaint simply does not seek liability that would be imposed "by reason of the selling, serving or furnishing of any alcoholic beverage." Policy, § I, ¶1.a, CG 00 33 12 04 (Doc. 2-4 at 62). The Illinois Supreme Court has interpreted the phrase "by reason of" to mean "because of." *See Crum & Forster*, 620 N.E.2d at 1079 (citing *Black's Law Dictionary* 201 (6th ed. 1990)). Clearly, the underlying complaint alleges no conduct that would render Whitaker or Moore liable because of their selling, serving or furnishing alcohol. Taylor seeks to impose liability on Whitaker and Moore because they failed to provide adequate security, to assist Taylor once the assault began and to warn Taylor about the dangerous propensities of his assailants. None of these alleged faults are related to selling, serving or furnishing alcohol. In fact, they could just

8

as easily have occurred at any business establishment where a multitude of people gather in the absence of alcohol (e.g., a concert or school sporting event). This is because the liability at issue stems from the duty of a business owner to protect his business invitees, not the duty of a seller, server or furnisher of alcohol to protect others from his intoxicated patrons. *See, e.g., Haupt v. Sharkey*, 832 N.E.2d 198, 201-02 (Ill. App. Ct. 2005). Therefore, liability for the failures alleged in Taylor's underlying action is not "because or" or "by reason of" the selling, serving or furnishing alcohol. Contrary to Whitaker and Moore's assertions, their mere status as a seller, server or furnisher of alcohol does not dictate that any liability against them is "by reason of" the sale, service or furnishing of alcohol.

This result is not inconsistent with the general purpose of liquor liability insurance and the risk undertaken by Capitol in issuing the CLL part of the Policy: to cover liability for injuries to third parties from those to whom the insured serves alcohol, not simply for any or all injuries occurring on their premises. To read the Policy that broadly would exceed what was reasonably contemplated by the parties when entering into the CLL part of the Policy.

This is not a case like *Chandler v. Doherty*, 702 N.E.2d 634 (Ill. App. Ct. 1998), where a doubt about coverage was resolved in favor of the insured. In that case, the underlying complaint alleged the insured was driving "his motor vehicle" when he caused an accident. *Id.* at 636. The insured actually owned two motor vehicles – one insured, the other not – and was driving the uninsured vehicle at the time of the accident. *Id.* The insurer claimed it owed no duty to defend or indemnify the insured because all parties knew, although it was not pled in the underlying complaint, that the insured was driving the uninsured vehicle. *Id.* The Court of Appeals disagreed, finding that the nonspecific pleading that the insured was driving "his motor vehicle" created a doubt about

9

coverage that could not be resolved by resort to extrinsic evidence, and that the doubt should be resolved in favor of the insured. *Id.* at 638. The Court of Appeals noted that the duty to defend was dependent solely on a comparison of the policy and the underlying complaint showing a *potential* for coverage and was "not annulled by the knowledge on the part of the insurer the allegations are untrue or incorrect or the true facts will ultimately exclude coverage." *Id.* Thus, the insurer had a duty to defend in that case. *Id.*

This case is more akin to *Crum & Forster*. In *Crum & Forster,* the Illinois Supreme Court examined an insurer's duty under a professional liability insurance policy to defend real estate agents sued for various commercial torts. *Crum & Forster*, 620 N.E.2d at 1077. The Court held that the business torts alleged were not potentially within the professional liability insurance coverage, that is, they did not arise or result from the performance of professional real estate services but instead from acts ancillary to the performance of real estate services. *Id.* at 1079. Accordingly, the facts in the underlying suit did not fall potentially within the insurance coverage, and the insurer owed no duty to defend. *Id.*

In his underlying suit, Taylor has alleged only a premises liability cause of action unrelated to Whitaker or Moore's service of alcohol. There is no doubt created by the underlying complaint, as there was in *Chandler*, that the pleading could be construed to assert a covered action, that is, to assert liability "by reason of" Whitaker or Moore's service of alcohol. There is simply no doubt in the underlying complaint that could be viewed in Whitaker and Moore's favor to present a covered action. Consequently, Capitol owes them no duty to defend or, by extension, to indemnify. *See Crum & Forster*, 620 N.E.2d at 1081.

Whitaker and Moore's speculation that Taylor may advance a Dram Shop Act claim in his

argument, if not in his pleading, is irrelevant. The Court must compare what is actually pled, not what the parties believe may be pled or argued in the future. The Court trusts that the state court hearing the underlying action will appropriately limit the argument to the causes of action actually pled, and this Court will not act on the assumption the state court will make a mistake. Furthermore, if Taylor does amend his complaint to allege liability "by reason of the selling, serving or furnishing of any alcoholic beverage," Whitaker and Moore may tender their defense again to Capitol. However, Taylor may have reasons for failing to assert such a claim. Capitol has pointed out in its filings in this case that Taylor may face problems bringing a Dram Shop Act claim because of the statute of limitations and his own possible intoxication. While the Court need not express an opinion on the merits of those arguments in light of its ruling today, Taylor's counsel may not believe it wise to saddle a potentially meritorious premises liability claim to a questionable Dram Shop Act claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Capitol's motion for summary judgment (Doc. 30) and **DIRECTS** the Clerk of Court to enter judgment accordingly declaring:

- Plaintiff Capitol Specialty Insurance Company has no duty under the insurance policy No. CS00322809 to defend either defendant Charles Whitaker or defendant Rodney Moore against any of the allegations made in the Petition in the underlying case, *Taylor v. Whitaker*, No. 2008 L 9 (Ill. Cir. Ct. Alexander Co.); and

- Plaintiff Capitol Specialty Insurance Company has no duty under the insurance policy No. CS00322809 to indemnify either defendant Charles Whitaker or defendant Rodney Moore for any liability they may have based on the Petition in the underlying case, *Taylor v. Whitaker*, No. 2008 L 9 (Ill. Cir. Ct. Alexander Co.).

**IT IS SO ORDERED.**
**DATED: September 10, 2009**

                                                s/ J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**